UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCO CAPITAL CORPORATION LTD, <br><br>           Plaintiff, <br><br>           v. <br><br> DEUTSCHE BANK AG, <br><br>           Defendant. | 1:12-cv-7270-RWS <br><br> ECF Case |

DECLARATION OF JAYANT W. TAMBE
IN SUPPORT OF DEFENDANT DEUTSCHE BANK AG'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

I, Jayant W. Tambe, make this Declaration pursuant to 28 U.S.C. § 1746 and state the following under penalty of perjury:

1.  I am a member of the law firm of Jones Day, counsel for Deutsche Bank AG ("Deutsche Bank"), in the above-referenced action.

2.  I submit this declaration in support of Deutsche Bank's motion to dismiss the First Amended Complaint, filed by Plaintiff Arco Capital Corporation, Ltd. ("Arco"), and put before this Court true and correct copies of the following documents, each of which accompanies this declaration.

3.  Attached as Exhibit 1 is a "blackline" comparing the texts of the original Complaint, filed September 28, 2012 [Docket No. 1], and the First Amended Complaint, filed July 3, 2013 [Docket No. 25].

4.  Attached as Exhibit 2 are relevant excerpts of the Indenture between CRAFT EM CLO 2006-1, Ltd., as Issuer (the "Issuer" or "CRAFT EM CLO"), and HSBC Bank USA,

National Association, as Trustee (the "Trustee"), for the Class G Credit Linked Notes Due 2012 ("Class G Notes"), dated as of June 9, 2006.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.

5. Attached as Exhibit 3 are relevant excerpts of the Indenture between Issuer and Trustee for the Class E Credit Linked Notes Due 2012 ("Class E Notes") and Class F Credit Linked Notes Due 2012 ("Class F Notes"), dated as of June 21, 2006.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.

6. Attached as Exhibit 4 are relevant excerpts of the First Amended and Restated Indenture between the Issuer and the Trustee for the Class G Notes, dated as of January 26, 2007.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.

7. Attached as Exhibit 5 are relevant excerpts of the First Amended and Restated Indenture between the Issuer and Trustee for the Class E Notes, dated as of January 30, 2007.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.

8. In pertinent part, the Indentures state:

> SECTION 2.6 *Transfer and Exchange of Notes*. . . .(e) . . .(vi) *Deemed Representations, Warranties and Agreements by Holders of Notes*.  In addition to any certifications delivered by the Holders or beneficial owners of any Note, each Person that purchases or otherwise acquires any Note or beneficial interest therein shall be deemed, by its purchase or other acquisition thereof, to have represented, warranted and agreed as provided in the legends of such Note and the representations set forth in <u>Exhibit B</u> hereto.
>
> \* \* \*
>
> SECTION 8.2 *Supplemental Indentures with Consent of Issuer Swap Counterparty and Noteholders*. . . .[T]he Issuer and the Trustee, at any time and from time to time, may enter into an

indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or modifying in any manner the rights of the Holders of the Notes under this Indenture with the prior written consent of the Issuer Swap Counterparty and [a] Majority of the Notes . . . materially and adversely affected thereby . . . .

\* \* \*

SECTION 10.5 *Information Reports*.

(a) With respect to each Calculation Date, the Issuer shall cause the Issuer Swap Counterparty to render an accounting and to prepare a report, with such changes as may be agreed to from time to time by the Issuer Swap Counterparty and [a] Majority of the Notes . . . (the "Information Report"), determined as of such Calculation Date, to be delivered to the Trustee and the Cash Deposit Account Bank not later than the second Business Day before the related Payment Date. The Information Report shall contain the following information and instructions:

    (i) the aggregate Outstanding Principal Amount of the Notes on such Calculation Date (giving effect to any application of monies pursuant to Section 11.1 that results in the reduction of the Outstanding Principal Amount of the Notes);

    (ii) the Note Interest Amount to be paid in respect of the Notes on such Payment Date;

    (iii) any Loss Determination Amount allocated to the Notes in respect of such Payment Date;

    (iv) the Balances of the Collection Account and the Custodial Account;

    (v) the most recent Moody's Model together with all Moody's Inputs (as such terms are defined in the Issuer Swap Confirmation); and

    (vi) the most recent Reference Registry (as such term is defined in the Issuer Swap Confirmation).

\* \* \*

(c) Promptly after receiving an Information Report, the Trustee shall deliver a copy thereof to the Reporting Agent and the Reporting Agent shall make such Information Report available in accordance with the Reporting Agent Agreement to each Noteholder and, if the Notes have Ratings, the applicable Rating Agencies.

(d) Each Information Report distributed to Noteholders, in accordance with Section 13.4, shall also contain a notice substantially to the following effect:

Reminder to Owner of Notes:

. . . [I]n order for holders of Notes to resell such Notes in reliance on the exemption from registration provided by Regulation S under the United States Securities Act of 1933 (the "Securities Act"), resales, pledges and other transfers of Notes or a beneficial interest in a Note may be made only . . . :

- to a person that is not a "U.S. person" within the meaning of Regulation S under the Securities Act and also not a "U.S. resident" within the meaning of the Investment Company Act; and

- in an "offshore transaction" within the meaning of Regulation S under the Securities Act in accordance with Rule 903 or 904 (as applicable) of Regulation S under the Securities Act.

Accordingly, each owner of a Note or a beneficial interest in a Note shall be deemed to represent and agree as follows:

(i) it is not a "U.S. person" as defined in Regulation S under the Securities Act nor is it a "U.S. resident" within the meaning of the Investment Company Act,

* * *

(iii) it is aware that the sale of a Note or a beneficial interest in a Note to it (other than the initial sale by the Issuer) is being made in reliance on the exemption from registration provided by Regulation S under the Securities Act and understands that the Notes offered in reliance on Regulation S will bear the appropriate legend (set forth in the Indenture . . . between CRAFT EM CLO 2006-1, Ltd., as Issuer, and HSBC Bank USA, National Association, as Trustee),

\* \* \*

(v) such owner acknowledges that the Issuer is not registered as an investment company under the Investment Company Act and that the Notes have not been registered under the Securities Act, and agrees that it will not resell, pledge or otherwise transfer beneficial interests in the Notes except to a person that is not a "U.S. resident" within the meaning of the Investment Company Act or a "U.S. person" as defined in Regulation S under the Securities Act,

\* \* \*

(viii) any purported transfer of a Note or a beneficial interest in a Note to a Person that does not comply with the requirements set forth above shall be null and void ab initio.

\* \* \*

SECTION 13.8 *Benefits of Indenture*. Nothing in this Indenture or in the Notes, expressed or implied, shall give to any Person, other than the parties hereto and their successors hereunder, the Issuer Swap Counterparty and the Noteholders (each of which shall be an express third party beneficiary of this Indenture to the extent of the rights granted thereto herein, with the power to exercise any right so granted as if a party hereto), any benefit or any legal or equitable right, remedy or claim under this Indenture.

(Indentures, at §§ 2.6(e)(vi), 8.2, 10.5(a), 10.5(c)-(d), 13.8.)

9. Attached as Exhibit 6 is a copy of Exhibit A (Form of Note) to the Indenture between Issuer and Trustee for the Class G Notes, dated as of June 9, 2006. This is an illustrative example of substantially similar Forms of Note referenced as Exhibit A in the other Indentures. The Note states in pertinent part:

\* \* \*

**THE HOLDER OF THIS NOTE OR OF AN INTEREST HEREIN, BY ITS ACCEPTANCE HEREOF OR OF AN INTEREST HEREIN, REPRESENTS, ACKNOWLEDGES AND AGREES THAT IT WILL NOT REOFFER, RESELL, PLEDGE OR OTHERWISE TRANSFER THIS NOTE OR ANY INTEREST HEREIN EXCEPT (A) TO A NON "U.S.**

**PERSON" (AS DEFINED IN REGULATION S UNDER THE SECURITIES ACT) WHO IS NOT A "U.S. RESIDENT" (WITHIN THE MEANING OF THE 1940 ACT) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR 904 (AS APPLICABLE) OF REGULATION S UNDER THE SECURITIES ACT, (B) IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS, (C) IN COMPLIANCE WITH THE REQUIREMENTS SPECIFIED IN THE INDENTURE REFERRED TO HEREIN AND (D) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY RELEVANT JURISDICTION.**

\* \* \*

**THIS NOTE REPRESENTS A LIMITED RECOURSE OBLIGATION OF THE ISSUER AND WILL BE PAID SOLELY FROM THE COLLATERAL SECURING THIS NOTE. NEITHER THIS NOTE NOR THE COLLATERAL THEREFOR IS INSURED OR GUARANTEED BY ANY GOVERNMENTAL AGENCY OR INSTRUMENTALITY OR BY ANY OTHER PERSON.**

**PRINCIPAL OF THIS NOTE IS PAYABLE AS SET FORTH HEREIN AND IS SUBJECT TO REDUCTION PURSUANT TO SECTION 2.3(B) OF THE INDENTURE REFERRED TO HEREIN. ACCORDINGLY, THE OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF. ANY PERSON ACQUIRING THIS NOTE MAY ASCERTAIN ITS CURRENT OUTSTANDING PRINCIPAL AMOUNT BY INQUIRY OF THE TRUSTEE.**

\* \* \*

Reference is hereby made to the Indenture and all indentures supplemental thereto for a statement of the respective rights, limitation of rights, duties and immunities thereunder of the Issuer, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, executed, authenticated and delivered.

This Note is issued under and is subject to the terms, provisions and conditions of the Indenture, to which the Holder of this Note by virtue of its acceptance hereof assents and by which such Holder is bound. To the extent that any provision of this Note contradicts or is inconsistent with the provisions of the Indenture,

the provisions of the Indenture shall control and supersede such contradictory or inconsistent provision herein. The Notes are subject to all terms of the Indenture.

(Note, at A-1 – A-5.)

10. Attached as Exhibit 7 is a copy of Exhibit B ("Deemed Representations of Noteholders") to the Indenture between Issuer and Trustee for the Class G Notes, dated as of June 9, 2006. This is an illustrative example of substantially similar Deemed Representations of Noteholders referenced as Exhibit B in the other Indentures. The Deemed Representations of Noteholders state, in pertinent part:

> Each person that purchases or otherwise acquires any Note or interest therein (a "Transferee") will be deemed, by its purchase or other acquisition thereof, to have represented to the Issuer and the Trustee and agreed as follows:
>
> 1. The Transferee, and any account on behalf of which the Transferee is purchasing an interest in the Notes, is not a "U.S. person" as defined in Regulation S under the United States Securities Act of 1933, as amended and not a "U.S. resident" within the meaning of the United States Investment Company Act of 1940, as amended.
>
> * * *
>
> 6. None of the Issuer, the Issuer Swap Counterparty or any associates or affiliates of any of them has given to the Transferee (directly or indirectly through any other Person) any assurance, guarantee or representation whatsoever as to the expected or projected success, profitability, return, performance, results, effect, consequence or benefit (including legal, regulatory, tax, financial, accounting or other advice) of its investment hereunder.
>
> 7. None of the Issuer, the Issuer Swap Counterparty or any of their respective affiliates is acting as a fiduciary or financial or investment adviser for the Transferee and the Transferee is not relying on any written or oral advice, counsel or representations of the Issuer, the Issuer Swap Counterparty or any of their respective affiliates. The Transferee, and any account on behalf of which the Transferee is purchasing an interest in the Notes, has consulted with its own legal, regulatory, tax, business, investment, financial,

and accounting advisers to the extent it has deemed necessary, and has made its own investment decisions based upon its own judgment and upon any advice from such advisers as it has deemed necessary and not upon any view expressed by the Issuer, the Issuer Swap Counterparty or any of their respective affiliates. The Transferee, and any account on behalf of which the Transferee is purchasing an interest in the Notes, is a sophisticated investor and is purchasing the Notes with a full understanding of all of the terms, conditions and risks thereof, and it is capable of assuming and willing to assume those risks. In connection with the purchase of Notes, the Transferee, and any account on behalf of which the Transferee is purchasing an interest in the Notes, meet all suitability standards imposed on them by applicable law. The Transferee acknowledges that certain Persons or organizations associated with the Issuer will perform services on behalf of the Issuer and will receive fees and/or compensation for performing such services.

8. The Transferee understands and agrees that any transfer of the Notes or any interest therein that does not comply with the requirements of this Indenture and the restrictions of the Note will be null and void ab initio.

\* \* \*

10. The Transferee has received the Indenture and the other Transaction Documents setting forth the terms and provisions of the Notes and the Transaction Documents and has not relied on any information relating to the Issuer, the Issuer Swap Counterparty, the Cash Deposit Account Bank, the Notes or any other person other than information that is contained in, and the terms and provisions of, the Indenture and the other Transaction Documents or is otherwise publicly available. The Transferee has had access to financial and other information concerning the Issuer and the Notes, in each case as it deemed necessary or appropriate in order to make an informed investment decision with respect to its purchase of an interest in the Notes, including an opportunity to ask questions of and request information from the Issuer.

\* \* \*

13. The Transferee understands that each of the Issuer, the Issuer Swap Counterparty and the Trustee and their respective affiliates will rely upon the accuracy and truth of the foregoing representations, and it hereby consents to such reliance.

(Deemed Representations of Noteholders, at B-1 – B-2, B-4 – B-5.)

11.     Attached as Exhibit 8 is a copy of the Note Subscription Agreement for the Class G Notes, dated as of June 9, 2006, executed by Gramercy Emerging Markets Fund, as Purchaser ("Gramercy"), and accepted and agreed to by the Issuer.

12.     Attached as Exhibit 9 is a copy of the Note Subscription Agreement for the Class F Notes, executed by Gramercy, and accepted and agreed to by Issuer on June 21, 2006.

13.     Attached as Exhibit 10 is a copy of the Note Subscription Agreement for the Class G-2 Notes, executed by Gramercy, and accepted and agreed to by Issuer on January 26, 2007.

14.     Attached as Exhibit 11 is a copy of the Note Subscription Agreement for the Class F-2 Notes, executed by Gramercy and accepted and agreed to by Issuer on January 29, 2007.

15.     In pertinent part, the Note Subscription Agreements state:

> **1. Subscription for the Notes.**
>
> * * *
>
> (b) This subscription by the Purchaser is irrevocable; provided, however, that the execution and delivery by the Purchaser of this Subscription Agreement will not constitute an agreement between the Company and the Purchaser until this Subscription Agreement is accepted on behalf of the Company and, if not so accepted (as described below), this subscription and the obligations of the Purchaser hereunder will terminate.
>
> * * *
>
> **4. Representations and Warranties of the Purchaser.**  As of the date hereof and as of the Closing Date, the Purchaser represents and warrants to the Company as follows:
>
> * * *
>
> (e)  The Purchaser has received the Indenture and the other Transaction Documents setting forth the terms and provisions of the . . . Notes and the Transaction Documents and has not relied on any information relating to the Company, the Issuer Swap

Counterparty, the Cash Deposit Account Bank, the . . . Notes or any other person other than information that is contained in, and the terms and provisions of, the Indenture and the other Transaction Documents or is otherwise publicly available. The Purchaser understands that: (i) none of Deutsche Bank AG, London Branch nor any of its affiliates (each, a "DBAG Entity" and collectively, the "DBAG Entities") nor any person acting on their behalf accepts any responsibility for the information relating to the Company or the . . . Notes; (ii) none of the DBAG Entities nor any person acting on their behalf accepts any responsibility for any additional information that has otherwise been made available to the Purchaser, whether at the date of publication, the date of this Agreement or otherwise; and that (iii) except in respect of any representation or warranty made by a DBAG Entity in its capacity as a party to a Transaction Document, none of the DBAG Entities nor any person acting on their behalf makes any representation or warranty, express or implied, as to the truth, accuracy or completeness of such information, whether at the date of publication, the date of this Agreement or otherwise.

(f)  None of the Company, the Issuer Swap Counterparty, any DBAG Entity or any of their respective Affiliates is acting as a fiduciary or financial or investment adviser for the Purchaser and the Purchaser is not relying on any written or oral advice, counsel or representations of the Company, the Issuer Swap Counterparty, any DBAG Entity or any of their respective Affiliates. The Purchaser, and any account on behalf of which the Purchaser is purchasing an interest in the . . . Notes, has consulted with its own legal, regulatory, tax, business, investment, financial, and accounting advisers to the extent it has deemed necessary, and has made its own investment decisions based upon its review of the Indenture and the other Transaction Documents, its own judgment and upon any advice from such advisers as it has deemed necessary and not upon any view expressed by the Company, the Issuer Swap Counterparty, any DBAG Entity or any of their respective Affiliates. The Purchaser, and any account on behalf of which the Purchaser is purchasing an interest in the . . . Notes, is a sophisticated investor and is purchasing the . . . Notes with a full understanding of all of the terms, conditions and risks thereof, and it is capable of assuming and willing to assume those risks. In connection with the purchase of . . . Notes, the Purchaser, and any account on behalf of which the Purchaser is purchasing an interest in the . . . Notes, meet all suitability standards imposed on them by applicable law. The Purchaser is able to bear the economic risk, and to withstand a complete loss, of an investment in the . . . Notes. The Purchaser acknowledges that certain Persons or organizations

associated with the Company will perform services on behalf of the Company and will receive fees and/or compensation for performing such services.

(g)  None of the Company, the Issuer Swap Counterparty, any DBAG Entity or any associates or affiliates of any of them has given to the Purchaser (directly or indirectly through any other Person) any assurance, guarantee or representation whatsoever as to the expected or projected success, profitability, return, performance, results, effect, consequence or benefit (including legal, regulatory, tax, financial, accounting or other advice) of its investment hereunder. No representations or warranties have been made to the Purchaser with respect to its acquisition of . . . Notes or any other entity other than the representations and warranties of the Company set forth herein, and the Purchaser has not relied upon any representation or warranty not set forth herein in connection with the acquisition of any . . . Notes.

(h) The Purchaser, and any account on behalf of which the Purchaser is purchasing an interest in the . . . Notes, is not a "U.S. person" as defined in Regulation S under the United States Securities Act of 1933, as amended and not a "U.S. resident" within the meaning of the United States Investment Company Act of 1940, as amended.

(i)  The Purchaser understands (and each beneficial owner of the . . . Notes has been advised) that the . . . Notes have not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act") or with any State or other jurisdiction of the United States, nor approved or disapproved by the U.S. Securities and Exchange Commission, any state securities commission in the United States or any other U.S. regulatory authority, and the Purchaser agrees not to re-offer, resell, pledge or otherwise transfer the . . . Notes except outside the United States in offshore transactions in accordance with Rule 903 or 904 of Regulation S under the Securities Act and in compliance with any applicable laws and regulations governing the offer and sale of securities and all other applicable laws. The Purchaser understands that no action has been taken to permit a public offering in any jurisdiction where action would be required for such purpose.

* * *

(m)  The Purchaser understands and agrees that any transfer of the . . . Notes or any interest therein that does not comply with the

> requirements of the Indenture and the restrictions of the Note will be null and void ab initio.
>
> * * *
>
> (s)  The Purchaser understands that each of the Company, the Issuer Swap Counterparty and the Trustee and their respective Affiliates will rely upon the accuracy and truth of the foregoing representations, and it hereby consents to such reliance.
>
> * * *
>
> **17.  Third Party Beneficiary.**  The Issuer Swap Counterparty shall be an express third party beneficiary of the respective representations, warranties and covenants of the Company and the Purchaser set forth herein.

(Note Subscription Agreements, at §§1(b), 4(e) – (i), (m), (s), 17.)

16.     Attached as Exhibit 12 are relevant excerpts of the Administration Agreement between the Issuer and Maples Finance Limited, as Administrator, dated June 9, 2006.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.  In pertinent part, this document states:

> **2.  SERVICES TO BE PROVIDED.**  The Administrator hereby agrees to perform and provide the services necessary and appropriate to the management of the Business in and from within the Cayman Islands as follows:
>
> * * *
>
> **2.4**  to provide the services of two or more directors of the Company in the Cayman Islands;
>
> * * *
>
> **2.9**  to perform all services and take all actions in connection with this agreement in or from within the Cayman Islands.

(Administration Agreement, at §§ 2.4, 2.9.)

17.     Attached as Exhibit 13 are copies of the Registers of Directors and Officers of CRAFT EM CLO 2006-1, Ltd., dated June 12, 2006, June 20, 2006, and January 23, 2008, respectively.

18.     Attached as Exhibit 14 are relevant excerpts of the Confirmation between Issuer and Deutsche Bank, dated June 9, 2006, related to the Credit Derivative Transaction - Class G Notes.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.

19.     Attached as Exhibit 15 are relevant excerpts of the Confirmation between Issuer and Deutsche Bank, dated June 21, 2006, related to the Credit Derivative Transaction - Class E Notes and Class F Notes.  This document is available in its entirety in both hard copy and electronic form at the request of the Court.

20.     Attached as Exhibit 16 is a copy of the First Amended and Restated Confirmation between Issuer and Deutsche Bank, dated January 26, 2007, related to the Credit Derivative Transaction - Class G Notes.

21.     Attached as Exhibit 17 is a copy of the First Amended and Restated Confirmation between Issuer and Deutsche Bank, dated January 30, 2007, related to the Credit Derivative Transaction - Class E Notes and Class F Notes.

22.     Attached as Exhibit 18 is a copy of Moody's Investor Services Press Release entitled "Rating Action:  Moody's downgrades notes issued by CRAFT EM CLO," dated April 6, 2009, available at:  http://www.moodys.com/research/Moodys-downgrades-notes-issued-by-CRAFT-EM-CLO-2006-1--PR_176589.

23.     Attached as Exhibit 19 are relevant excerpts of Moody's Investors Service Rating Symbols and Definitions, dated November 2012, available at:  http://www.moodys.com/

Pages/amr002002.aspx. This document is available in its entirety in both hard copy and electronic form at the request of the Court.

24. Attached as Exhibit 20 is a copy of the Consent of Noteholder Arco, dated July 15, 2008, to the G Note Amendment No. 1 at Exhibit 23, *infra* (the "G Note Arco Consent").

25. Attached as Exhibit 21 is a copy of the Consent of Noteholder Arco, dated July 15, 2008, to the E & F Note Amendment No. 1 at Exhibit 24, *infra* (the "E&F Note Arco Consent").

26. In pertinent part, the G Note Arco Consent and E &F Note Arco Consent (collectively, the "Arco Consents") state:

> \* \* \*
>
> This consent (the "Consent") is being delivered in connection with the Issuer's proposed execution and delivery of Amendment No. 1 to the First Amended and Restated Confirmation, dated March 23, 2007, between CRAFT EM CLO 2006-1, Ltd. And Deutsche Bank AG Noteholder (as evidenced by its execution of this Consent).
>
> The undersigned Noteholder hereby consents to the Amendment and acknowledges and approves the Issuer entering into the Amendment.
>
> \* \* \*

27. Attached as Exhibit 22 is a copy of the letter agreement between Arco and Deutsche Bank, dated July 15, 2008 (the "Letter Agreement").

28. In pertinent part, the Letter Agreement states:

> \* \* \*
>
> This letter sets forth certain agreements between DBAG and Arco Capital Corporation Ltd. . . . with respect to the Class F-1 Notes, the Class F-2 Notes, the Class G-1 Notes and the Class G-2 Notes issued by the Issuer under the First Loss Indenture and the Second Loss Indenture and owned by the Arco Noteholder on the date hereof. . . .For good and valuable consideration, the receipt of which is hereby acknowledged, DBAG and, by its signature set forth below, the Arco Noteholder, hereby agree as follows:
>
> \* \* \*
>
> The Arco Noteholder hereby acknowledges that it has received (i) the Amendment No. 1 to the First Amended and Restated

-14-

Confirmation, dated March 23, 2007, which provides for an amendment to the definition of "Specified Payment Obligation" contained in the First Loss CDS Confirmation (the "First Loss CDS Amendment") and (ii) the Amendment No. 1 to the First Amended and Restated Confirmation, dated March 23, 2007, which provides for an amendment to the definition of "Specified Payment Obligation" contained in the Second Loss CDS Confirmation (the "Second Loss CDS Amendment" and together the "CDS Amendments").  Contemporaneously with the execution of this letter by the Arco Noteholder, the Aro Noteholder hereby agrees to provide its written consent in the form set forth in Exhibit A hereto to the execution and delivery of the CDS Amendments by each of DBAG and the Issuer (the "<u>Arco Consent</u>").

\* \* \*

In consideration for the payment of the Adjustment Amount and the Other Amounts, the Arco Noteholder hereby releases DBAG and its affiliates, and any employees, officers, directors or agents ofDBAG or any of its affiliates (collectively, the "DBAG Entities"), from, and none of the DBAG Entities shall have any liability for, any loss, claim, cost, charge, expense or other liability (other than any such loss, claim, cost, charge, expense or other liability associated with any Subsequent Adjustment Amount) that the Arco Noteholder has incurred, or otherwise has become subject to, in connection with or arising from the inclusion of a Non-ISDA Reference Obligation in the Reference Portfolio under each of the First Loss CDS Confirmation and the Second Loss CDS Confirmation prior to or after the effective date of this letter agreement. . . .

\* \* \*

Notwithstanding anything in this letter agreement to the contrary, the obligations, waivers, releases, consents and acknowledgments of the parties hereto shall not become effective unless and until the Earls 8 Series 469 transaction, whereby a portion of the Arco Notes will be repackaged, has closed.

\* \* \*

(Letter Agreement, at 3-4.)

      29.    Attached as Exhibit 23 is a copy of Amendment No. 1 to the Class G Note First Amended and Restated Confirmation, dated March 23, 2007 ("G Note Amendment No. 1").

30. Attached as Exhibit 24 is a copy of Amendment No. 1 to the Class E Note and Class F Note First Amended and Restated Confirmation, dated March 23, 2007 ("E & F Note Amendment No. 1").

31. In pertinent part, the G Note Amendment No. 1 and E & F Note Amendment No. 1 state:

\* \* \*

DBAG and CRAFT hereby agree and acknowledge as follows:

(i) Clause (a) of the definition of "Specified Payment Obligation" appearing on page 14 of the CDS Confirmation is deleted in its entirety and replaced with the following:

(a) any rate swap transaction, basis swap, forward rate transaction, commodity swap, commodity option, equity or equity index swap, equity or equity index option, bond option, interest rate option, foreign exchange transaction, cap transaction, floor transaction, collar transaction, currency swap transaction, cross-currency rate swap transaction, currency option, credit derivative transaction or any other similar or other derivative transaction (each, a "Derivative Transaction") that, in each case, is documented by or under either: (x) an ISDA master agreement, schedule and confirmation or (y) if documentation of the type described in the preceding clause (x) does not apply to such Derivative Transaction, such other customary documentation used by the Originator for purposes of documenting such Derivative Transaction; or

(ii) The amendment to the CDS Confirmation pursuant to clause (i) above shall be deemed effective as of January 26, 2006 as if the CDS Confirmation had been modified by such amendment on such date.

\* \* \*

(G Note Amendment No. 1, at 1; E & F Note Amendment No. 1 at 1)

32. Attached as Exhibit 25 is a copy of the Earls Eight Prospectus for the Series 469 Tranche B USD 10,007,500 Class B Pass Through Notes due 2012 Linked to CRAFT EM CLO

-16-

2006-1, Ltd. USD 30,000,000 Class G-1 Credit Linked Notes due 2012 and CRAFT EM CLO 2006-1, Ltd. USD 30,000,000 Class G-2 Credit Linked Notes due 2012 (the "Earls Eight Prospectus").

    33.    In pertinent part, the Earls Eight Prospectus states:

> \* \* \*
>
> Purchasers of [the Earls Eight] Notes should conduct such independent investigation and analysis regarding the [Class G CRAFT Notes] and all other assets from time to time comprising the [Class G CRAFT Notes] and [CRAFT CLO] . . . as they deem appropriate to evaluate the merits and risks of an investment in the [the Earls Eight] Notes. The Issuer and [Deutsche Bank] disclaim any responsibility to advise purchasers of [the Earls Eight] Notes of the risks and investment considerations associated with the purchase of the [the Earls Eight] Notes as they may exist at the date hereof or from time to time thereafter.
>
> \* \* \*
>
> The [Earls Eight] Notes are pass-through instruments. Payments of interest and principal will be funded wholly from payments of interest and principal received by the Issuer in respect of the [the Class G CRAFT Notes]. To the extent that such payments of interest and principal are not received from the [the Class G CRAFT Notes], interest and principal payments on the [Earls Eight] Notes will be deferred and/or reduced, potentially to zero, as applicable. Accordingly, the economic return on the [Earls Eight] Notes is directly linked to the performance of the [the Class G CRAFT Notes]. Investors should examine carefully the offering documentation relating to the Collateral [i.e., the Class G Notes] (a copy of which is available for inspection as set forth below). The considerations set forth therein apply equally to investors' exposure to the Collateral [i.e., the Class G Notes] through an investment in the [Earls Eight] Notes.
>
> \* \* \*
>
> The Issuer has not been and will not be registered under the United States Investment Company Act of 1940 . . . and the [Earls Eight] Notes have not been and will not be registered under the United States Securities Act of 1933, as amended (the "Securities Act"). Consequently, the Notes may not be offered, sold, resold, delivered or transferred within the United States or to, or for the account

-17-

> benefit of, U.S. persons (as such term is defined in Regulation S under the Securities Act), except in accordance with the provisions of Regulation S or in accordance with any applicable exemption from the registration requirements under the Securities Act . . .

(Earls Eight Prospectus, at 1, 3, 57.)

34. Attached as Exhibit 26 is a copy of the Receipt by Deutsche Bank of Earls Eight Limited Series 469 Tranche A USD 14,500,000 Class A Pass Through Amortising Notes Due 2012, and Receipt by Arco of Earls Eight Limited Series 469 Tranche B USD 10,0007,500,000 Class B Pass Through Notes Due 2012 Cross Receipt (the "Cross Receipt").

35. In pertinent part, the Cross Receipt states:

> On July 15, 2008, Arco Capital Corporation Ltd., a Cayman Islands limited liability corporation, ("Arco"), sold and transferred to Earls Eight Limited, a Cayman Islands limited liability corporation ("Earls 8"), the CRAFT EM CLO 2006-1, Ltd USD 30,000,000 Class 01 Credit Linked Notes due 2012, and the CRAFT EM CLO 2006-1, Ltd USD 30,000,000 Class 02 Credit Linked Notes due 2012, (collectively, the "CRAFT Notes").
>
> In consideration for the sale and transfer of the CRAFT Notes to Arco, Earls 8 paid to Arco a cash amount of USD 14,500,000 and issued to Arco the Earls 8 Series 469 Class B Notes (ISIN: XS0375014502; Common Code 037501450) in Nominal Amount of USD 10,007,500 (the "Class B Notes").
>
> Arco hereby acknowledges receipt of a cash amount of USD 14,500,000 and of the Class B Notes.
>
>            * * *

(Cross Receipt at 1.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29, 2013

                 /s/ Jayant W. Tambe
                 JAYANT W. TAMBE

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2013, I caused the foregoing to be served to the counsel of record through electronically filing the foregoing with the Clerk of Court using the CM/ECF system.

      /s/ Jayant Tambe