UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------X

ARCO CAPITAL CORPORATION LTD.,

                     Plaintiff,                12 Civ. 7270

   -against-                             OPINION

DEUTSCHE BANK AG,

                    Defendant.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        MILLER & WRUBEL P.C.
        570 Lexington Avenue
        New York, NY 10022
        By:  John G. Moon, Esq.
             S. Christopher Provenzano, Esq.


        Attorneys for Defendant

        JONES DAY
        222 East 41st Street
        New York, NY 10017
        By:  Jayant W. Tambe, Esq.
             Kelly A. Carrero, Esq.
             Michael O. Thayer, Esq.

**Sweet, D.J.**

Deutsche Bank AG ("Deutsche Bank" or "Defendant") has moved pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act to dismiss the First Amended Complaint (the "First Amended Complaint" or "FAC") of Arco Capital Corporation Ltd. ("Arco" or "Plaintiff"). Upon the conclusions set forth below, the motion is granted and the FAC is dismissed with prejudice.

**Prior Proceedings**

This action was commenced on September 27, 2013. On December 3, Deutsche Bank moved to dismiss the original Complaint. This motion was granted on June 6, 2013 (the "June 6 Opinion").[1] On July 3, Plaintiff filed the FAC.

On July 29, 2013, Deutsche Bank moved to dismiss the FAC. The instant motion was heard and marked fully submitted on October 2, 2013.

---

[1] This Court's June 6, 2013 Opinion dismissing Plaintiff's original complaint is reported at <u>Arco Capital Corp. Ltd. v. Deutsche Bank AG</u>, 12 Civ. 7270, 2013 WL 2467986 (S.D.N.Y. June 6, 2013)[Docket ("Doc.") #23].

1

**Facts**

The transaction giving rise to this action was alleged in the initial complaint and described in the June 6 Opinion. The additional allegations in the FAC, filed on July 5, 2013, principally involve a July 2008 transaction in which Arco purchased notes from Earl's Eight Limited, a special purpose entity incorporated in the Cayman Islands ("Earl's Eight"). (FAC ¶ 97.) The transaction is alleged as follows:

In or about March 2007, Deutsche Bank, allegedly in violation of the terms of the CRAFT Transaction, designated Reference Obligations that did not conform to International Swaps and Derivatives Association, Inc. ("ISDA") standards. (FAC ¶¶ 93-94.)  Arco learned of this breach in or about early 2008 when two such Reference Obligations defaulted, and demanded that Deutsche Bank renegotiate the terms of its purchase of certain CRAFT Notes. (FAC ¶ 94.)  Deutsche Bank did so, and in July 2008, Deutsche Bank repackaged certain CRAFT Notes into securities called Earls Eight Series 469 Tranche B Pass Though Notes ("Earls Eight Notes"). (FAC ¶¶ 95-97.) The Earls Eight Notes, as "securities" under the Exchange Act, incorporated the same Eligibility Criteria and other obligations as the CRAFT Notes, including the requirement that an "Independent

2

Accountant" certify compliance with the Eligibility Criteria
upon default.  Deutsche Bank also agreed to additional
obligations, such as not including non-ISDA derivatives as
Reference Obligations. (FAC ¶¶ 96-97); (Declaration of Jayant W.
Tambe, July 29, 2013 ("Tambe Decl."), Ex. 22 (Letter Agreement
dated July 15, 2008)); (Tambe Decl. Ex. 25 (Prospectus dated
July 15, 2008).) Deutsche Bank sold Arco the Earls Eight Notes
on July 15, 2008. (FAC ¶ 97.)

        The Earls Eight offering documents contain disclaimers
regarding the risks of the Earls Eight Notes, and caution
investors to "examine carefully" the documentation relating to
the underlying CRAFT Class G Notes.  (Tambe Decl. Ex. 25 at 3.)
Arco, as an investor in the Earls Eight Notes, was informed
that:

>           Purchasers of [the Earls Eight] Notes should conduct
>           such independent investigation and analysis regarding
>           the [CRAFT Class G Notes] and all other assets from
>           time to time comprising the [CRAFT Class G Notes] and
>           [CRAFT CLO] . . . as they deem appropriate to evaluate
>           the merits and risks of an investment in [the Earls
>           Eight] Notes.

(Id. at 1.)  Through the Earls Eight offering documents, "[t]he
Issuer [i.e. Earls Eight] and the Arranger [i.e. Deutsche Bank]
disclaim[ed] any responsibility to advise the purchasers of [the

3

Earls Eight] Notes of the risks and investment considerations associated with the purchase of the [Earls Eight] Notes as they may exist at the date hereof or from time to time thereafter." (Id. at 1.)

Arco's allegations arise out of events that occurred with respect to seventeen Reference Obligations, some related to the Earls Eight transaction and others relating to the CRAFT CLO, that Deutsche Bank designated in January 2007. (FAC ¶¶ 13, 14, 84, 91, 212, 232, 237.) The Reference Obligations were selected by Deutsche Bank, and noteholders could rely only on Deutsche Bank's assurances that they would be selected in compliance with the Eligibility Criteria. (FAC ¶¶ 119-121.) Prior to a default, Deutsche Bank purportedly permitted Arco no knowledge about any Reference Obligation. In 2007 there was a single default; three in 2008 (during the financial crisis); two in 2009; two in 2010; five in 2011; and in the first three months of 2012, an additional two. (FAC ¶¶ 123, 130, 133.) When the CRAFT CLO Notes came due in June 2012, CRAFT had experienced 15 defaults, not including the two non-ISDA Reference Obligations, which Arco used to force Deutsche Bank to repackage the Earls Eight Notes in July 2008. (FAC ¶ 138). Arco has alleged that it was not alerted to the possibility of fraud until after the five defaults occurred in 2011. (FAC ¶ 137.)

4

The accelerating series of defaults in 2011 purportedly led Arco to commence an investigation that ultimately revealed that Deutsche Bank had disregarded the Eligibility Criteria and used the Reference Portfolio to transfer its toxic loans to the noteholders. (FAC ¶¶ 122-138.) Initially, in trying to investigate the circumstances of these defaults, Arco was frustrated by a lack of publicly available information, (FAC ¶ 120-121, 134), and allegedly by stonewalling, repeated misrepresentations and false assurances by Deutsche Bank. (FAC ¶¶ 118, 120, 124-125, 127-131, 135-136.) Arco then obtained a few Independent Accountant certifications relating to some defaults, which indicated breaches of the terms of the transaction, not fraud. (FAC ¶¶ 101-108.)

In the fall of 2011, having difficulty obtaining further information, Arco's general counsel retained litigation consultants to perform factual investigation of the financial statements of the Reference Obligors. (FAC ¶ 135.)  This analysis was difficult to conduct because many of the Reference Obligors were emerging markets companies or non-public. (FAC ¶ 136.)  When Reference Obligations were finally identified and researched, Arco discovered apparent repeated violations of the Eligibility Criteria. (FAC ¶¶ 142-197.)  By mid-2012, Arco

believed from its investigations that the numerous defaults were not the result of a poor investment or simple noncompliance with the terms of the transaction, but represented a deliberate fraudulent effort by Deutsche Bank to transfer its bad debts to investors. (FAC ¶ 118).

Count I of the FAC has alleged scheme liability under Rule 10b-5(a) and (c) on the sale of CRAFT and Earls Eight Notes, Count II has alleged misrepresentation and omission liability on the sale of the Earls Eight Notes under Rule 10b-5(b), and Counts III and IV have alleged common law fraud and breach of contract, respectively, on the CRAFT and Earls Eight Notes.

**The Applicable Standards**

The applicable standards were set forth in the June 6 Opinion and apply on the instant motion as well.

**The Transactions Are Not Barred By Morrison**

Deutsche Bank has contended that the sale of the Earls Eight Notes fails to satisfy Morrison, because Arco has pled no facts establishing that the title passed or irrevocable

6

liability was incurred in the U.S., and instead has attempted to

rely on the "conduct and effects" test Morrison rejected. (Mov.

Br. at 22.)  Deutsche Bank's conclusion is belied by the FAC,

which alleges:

> Arco's purchase of Earls Eight Notes from Deutsche
> Bank was effectuated by means of the execution of
> documents by Arco Capital Management LLC, a Puerto
> Rico LLC as attorney in fact for Arco, from its
> offices in Puerto Rico. Deutsche Bank's counsel,
> located in New York, held the signature pages for both
> Arco and Deutsche Bank. When the transaction was
> agreed, Deutsche Bank's counsel emailed the signature
> pages to Arco in Puerto Rico and Deutsche Bank in
> London, copying LEMG personnel in New York. The Earls
> Eight Notes were sold into Arco's prime brokerage
> account at Citigroup, located in New York, NY. On July
> 17, 2008, Arco Capital Management LLC from its offices
> in Puerto Rico transmitted to the London Branch of
> Deutsche Bank a cross-receipt evidencing closing of
> the transaction. It was the understanding of the
> parties that the transaction closed when Arco received
> the Earls Eight Notes and funds in its accounts in New
> York, and Deutsche Bank received the G Notes in its
> account.

(FAC ¶ 99); (see also FAC ¶ 17.)

The Second Circuit has concluded that, under Morrison,

in order to adequately allege the existence of a domestic

transaction, "it is sufficient for a plaintiff to allege facts

leading to the plausible inference that the parties incurred

irrevocable liability within the United States." Absolute

<u>Activist Value Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60, 68 (2d Cir. 2012).

The FAC, as shown above, has alleged that the acts constituting the sale of the Earls Eight Notes occurred in the United States: Arco's agreement was executed in the United States, sent to Deutsche Bank's U.S. counsel, the securities were delivered in the United States, and the parties understood the transaction to close when funds and securities were delivered in New York. (<u>See</u> FAC ¶¶ 17, 99.)  Arco therefore "incurred irrevocable liability within the United States to take and pay for a security." <u>Absolute Activist</u>, 677 F.3d at 68.

Deutsche Bank has contended that the Morrison Court "precludes application of Section 10(b) and Rule 10b-5 to offshore transactions, including those structured expressly in accordance with Regulation S like the Earls Eight transaction." (Mov. Br. at 22.)  However, <u>Morrison</u> referred to the 1933 Act and other securities laws to demonstrate that they were not intended to have extraterritorial effect. Selling securities under Regulation S does not automatically exempt parties from the antifraud provisions of the 1933 Act.  Moreover, Regulation S expressly provides that it relates only to the 1933 Act, and "not to antifraud or other provisions of the federal securities

8

laws," including those upon which Arco relies.   17 C.F.R. § 230 (Preliminary Note ¶ 1).

Accordingly, the Earls Eight transaction is not barred by Morrison, and the conclusions with respect to Morrison in the June 6 Opinion concerning the CRAFT CLO transaction remain. (See June 6 Opinion at 16-26.)

**Counts I and II Are Time-Barred**

Although Morrison does not preclude Plaintiff's federal claims, Arco's amended Count I and Count II claims are time-barred under the applicable statutes of repose and limitations under which this Court dismissed the predecessor claim. (June 6 Opinion at 33-34 (applying 28 U.S.C. § 1658(b)).) Specifically, Count I is untimely under the five-year statute of repose as based on the 2006 or 2007 CRAFT Notes and Counts I and II are both untimely under the statute's two-year post-discovery deadline.

Pursuant to 28 U.S.C. § 1658(b), "[a]n action under Section 10(b) of the Exchange Act or Rule 10b-5 is subject to a five-year statute of repose or may be brought within '2 years

after the discovery of the facts constituting the violation.'" (Id. at 26.)

"The five-year statue of repose period is a fixed statutory cutoff independent of a plaintiff's awareness of a violation and is an absolute bar, not subject to equitable tolling for any reason." (Id. at 27 (citing Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991); P. Stolz Family P'ship, L.P. v. Daum, 355 F.3d 92, 102-03 (2d Cir. 2004)).  Under the Second Circuit's decision in Arnold v. KPMG LLP, 334 F.App'x 349, 351 (2d Cir. 2009), "the statute of repose in federal securities law claims starts to run on the date the parties have committed themselves to complete the purchase or sale transaction."  The June 6 Opinion held that the statute of repose barred the CRAFT Notes claims because at latest Arco purchased the CRAFT Notes in May 2007, more than five years before filing its initial Complaint, and "Arco has not meaningfully distinguished itself from Arnold." (June 6 Opinion at 27-28.)

Arco's FAC contends that the July 15, 2008 Earls Eight transaction supports tolling the applicable five-year statute of repose by eighteen months with respect to the CRAFT Notes.

In Arnold, which is the sole case Arco cites to
support tolling, the last in the "complex series of securities
transactions" was a capstone to the alleged fraud, requiring
tolling from the date of the last transaction. See Arnold v.
KPMG LLP, 543 F. Supp.2d 230, 232 (S.D.N.Y. 2008); (Tambe Decl.
Ex. 27 at ¶¶ 79-84, 90 [Arnold Third Amended Complaint] (but for
the last transaction—a sale following a series of purchase
transactions—the alleged tax shelter scheme would not have
generated any artificial losses and no fraudulent tax deduction
could have occurred).)  Here, unlike in Arnold, Earls Eight is
not the ultimate and necessary step in a series of
interconnected transactions, but rather a separate financing
transaction undertaken at Arco's request as part of a settlement
between the parties approximately eighteen months after the
alleged fraud is purported to have been underway. (AC ¶¶ 94-97;
Ex. 22 [Letter Agreement].)  Arco failed to include Earls Eight
in its initial complaint and has itself alleged that the sale of
the Earls Eight Notes constitutes an independent violation under
10b-5. (FAC ¶ 16.)  Earls Eight cannot therefore be viewed as
"essential" to the alleged scheme.  The distinctions between
this case and Arnold bar equitable tolling of the repose period
as applicable to CRAFT. See Lampf, Pleva, Lipkind, Prupis &
Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991) (holding

"tolling principles do not apply," because the purpose of the statute of repose is "clearly to serve as a cutoff").

Arco's FAC also contends that the repose period for a claim based on the CRAFT Notes runs from either (i) July 15, 2012 (the last day of the purported "violation"), or (ii) July 15, 2008 (the date of the last alleged misrepresentation). (Plaintiffs' Opposition Brief [Docket No. 33], "Opp. Br.", at 9-12.) These issues were previously determined in the June 6 Opinion. (See June 6 Opinion at 28, 32-33); see also Correspondent Servs. Corp. v. J.V.W. Inv. Ltd., 524 F. Supp.2d 412 (S.D.N.Y. 2007) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation") (citations and quotations omitted)).  Arco's claim under Rule 10b-5(a) and (c) with respect to the 2006 or 2007 CRAFT Notes therefore remains time-barred under the statute of repose. (June 6 Opinion at 28, 32-33 (the CRAFT Notes were purchased, at the latest, in May of 2007, more than five years prior to the filing of the initial complaint).)

Arco's CRAFT Notes claim has also expired under the two-year post-discovery rule, as this Court previously held.

12

(Id. at 33 (quoting City of Pontiac Gen. Employees Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011)).)

Arco contends that the FAC's new allegations overcome the two-year deadline and instead support the inference that it was not until the pattern of defaults in 2011 that "Arco could reasonably be expected to attempt undertaking investigation of the financial condition of emerging market companies," (FAC ¶ 122) and that it was not until the completion of this investigation in 2012 revealing a pattern of bad loans being designated as Reference Obligations that Arco did, and could reasonably have, discovered all the elements of its action supporting Counts I and II.  (Opp. Br. (citing FAC ¶ 137).)

These "new allegations" in Arco's FAC (Opp. Br. at 12–14 (citing FAC ¶¶ 118-137), do not alter the June 6 Opinion holding that Arco's federal securities law claims are time-barred under § 1658(b). (June 6 Opinion at 32 ("allegations in the Complaint relevant to scienter, as pled, demonstrate that Arco could have discovered 'the facts constituting the violation' within two years of the date upon which 'a reasonably diligent plaintiff would have sufficient information about the fact to adequately plead it in a complaint. . . .'") (citation omitted).)

13

Under the two-year post-discovery statute of
limitations, Arco's Section 10(b) claims expired two years after
the date upon which "a reasonably diligent plaintiff would have
sufficient information . . . to adequately plead [its claims] in
a complaint." City of Pontiac, 637 F.3d at 175; see also Merck &
Co. v. Reynolds, 130 S.Ct. 1784 (2010); Lighthouse Fin. Grp. v.
Royal Bank of Scotland Grp., PLC, 902 F. Supp. 2d 329 (S.D.N.Y.
2012).  The applicable legal standard is not a subjective one,
as Arco contends. (Opp. Br. at 12-13.) A fact is deemed
"discovered" for § 1658(b) purposes when "a reasonably diligent
plaintiff would have sufficient information about that fact to
adequately plead it in a complaint." (June 6 Opinion at 33-34)
(citations omitted); accord Intesa Sanpaolo v. Credit Agricole,
12 Civ. 2683, 2013 U.S. Dist LEXIS 19635, at *16 (S.D.N.Y.
Feb. 12, 2013).  Arco's allegations, including the newly added
allegations, demonstrate that more than two years prior to
filing its initial complaint in September 2012, the relevant
facts now alleged in support of both the CRAFT and Earls Eight
claims, including allegations relevant to scienter, could have
been discovered.

Arco was provided the identity of the defaulted
Reference Obligations at the time of default.  (FAC ¶ 121.)  The

14

defaults began as early as 2007 (id. at ¶ 123), and by 2009 seven of the seventeen Reference Obligations of which it now complains had already defaulted. (Id.)  By 2008, over four years before it filed its initial complaint, Arco had already challenged the eligibility of two of the seventeen defaulted Reference Obligations resulting in the July 2008 Letter Agreement.  (Id. ¶¶ 94-97.)  The Letter Agreement, on its face, is a settlement following Arco's discovery that it, unlike other investors, had not signed the amendment in 2007 to allow the inclusion of non-ISDA documented derivatives in the Reference Portfolio.  This settlement, and the subsequent offering documents of Earls Eight, provide additional support that, under a "reasonably diligent plaintiff" standard, Arco was on inquiry notice by at least July 2008.  Further, though Arco retained legal counsel as early as December 2009, almost three years prior to filing its initial complaint (id. ¶ 126), Arco waited two more years, until Fall 2011, to retain litigation consultants to investigate the defaulted Reference Obligations. (Id. ¶ 135).

Arco's FAC has not alleged what its 2011 investigation uncovered to substantiate its contention that Deutsche Bank's scienter could not be discovered earlier, as the June 6 Opinion holds.  For the seven of seventeen defaulted Reference

15

Obligations that Arco has identified, it has alleged only facts
available contemporaneous with default (FAC ¶¶ 144-197), and
three of these seven defaulted between 2007 and 2009; Egana in
September 2007 (id. ¶ 142), Peace Mark in October 2008 (id. ¶
160), and Wockhardt in July 2009 (id. ¶ 187).  No additional
relevant facts with respect to scienter have been alleged to
alter the prior conclusions. See, e.g., Merrill, Lynch, Pierce,
Fenner & Smith, Inc. v. Young, 91 Civ. 2923, 1996 WL 383135, at
*7-8 (S.D.N.Y. July 9, 1996) (dismissing claims and denying
leave to replead where amended complaint merely "add[s]
conclusory allegations" because such "amendments are cosmetic;
they add no new factual allegations").


        Counts I and II rely on one set of facts to plead that
Deutsche Bank purportedly acted with scienter concerning both
the CRAFT CLO and the Earls Eight Notes.  For the same reasons
that the CRAFT Notes are time-barred, the Earls Eight claims are
also.  Accordingly, the CRAFT and Earls Eight 10b-5 claims are
both "untimely with respect to § 1658(b)'s two-year post-
discovery deadline." (June 6 Opinion at 32 ("allegations in the
Complaint relevant to scienter, as pled, demonstrate that Arco
could have discovered 'the facts constituting the violation'
within two years of the date upon which 'a reasonably diligent
plaintiff would have sufficient information about that fact to

16

adequately plead it in a complaint . . . .'" ) (quoting City of Pontiac, 637 F.3d at 175).)

## The Allegations of 10b-5 Violations Are Inadequate

In any event, Arco's federal securities claims are inadequately pled.

To state a claim for a violation under § 10(b) and 10b-5(b), a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." See, e.g., Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP, 603 F.3d 144, 151 (2d Cir. 2010).[2]

---

[2] The elements are the same under 10b-5(a) and (c), except the first element under 10b-5(a) and (c) is a "device, scheme, or artifice to defaud" or "any act, practice, or course of business which operates or would operate as a fraud or deceit."  17 C.F.R. § 240.10b-5(a),(c); see, e.g., In re Refco Capital Mkts., Ltd., Brokerage Customer Secs. Litig., 2007 WL 2694469, at *8 (S.D.N.Y. Sept. 13, 2007), aff'd Capital Mgmt. Select Fund v. Bennett, 670 F.3d 194, 234 (2d Cir. 2012). Arco, as found below, has not sufficiently pled facts supporting this first element under either standard.  This analysis applies equally to both Counts and both transactions.  The Earls Eight claims are based on the same alleged misconduct as the CRAFT claim, and the FAC does not add any new allegations related to the Earls Eight Notes identifying any misstatements with particularity or explaining why they are fraudulent.

Fraudulent conduct is not sufficiently pled.  To
satisfy Rule 9(b), a plaintiff "must specify what deceptive or
manipulative acts were performed, which defendants performed
them, when the acts were performed, and the effect the scheme
had on investors in the securities at issue." See, e.g., In re
Refco, 2007 WL 2694469, at *7-8.[3]

Arco alleges that Deutsche Bank's fraud included the
failure to honor the E&Y Certification requirement (FAC ¶¶ 101-
108, 207, 219, 228, Ex. B.), the Eligibility Criteria (id. ¶¶
139-197, 205-206, 220, 228), the Replenishment Conditions (id.
¶¶ 101, 103-104, 106, 151, 219, 228), and the requirement to
give effect to an updated Moody's Mapping Table (id. ¶¶ 109-117,
208), all of which are contractual obligations imposed on
Deutsche Bank by the Swap Agreements. (Tambe Decl. Exs. 14-17 at
¶4, Schedule C, Schedule D, Schedule E [Swap Confirmations].)
But the FAC has not identified all seventeen defaulted Reference
Obligations; alleged facts to support why each Reference
Obligation was ineligible; demonstrated evidence of Deutsche
Bank's fraud and not inadvertence, error, or oversight in the
selection; pled that Deutsche Bank failed to deliver the

---

[3] The pleading standard for 10b-5(a) and (c) under 9(b) similarly requires that
Arco "(1) specify the statements that the plaintiff contends were fraudulent,
(2) identify the speaker, (3) state where and when the statements were made,
and (4) explain why the statements were fraudulent."  Romach v. Chang, 355
F.3d 164, 170 (2d Cir. 2004).

required E&Y Certifications for any of the seventeen defaulted
Reference Obligations; alleged that Plaintiff was entitled to
anything more than the E&Y Certifications that were delivered or
how what was delivered amounts to fraud; pled any facts
supporting the allegation that Deutsche Bank used the wrong
Moody's Mapping Table; or alleged facts to support how use of
the wrong Moody's Mapping Table and/or payment of Credit Event
Payments to Deutsche Bank under the Swap Agreements would
constitute fraud.

According to Deutsche Bank, Arco has alleged nothing
more than breaches of contract but "a breach of contract . . .
does not justify a Rule 10b-5 action . . . unless, when the
promise was made, the defendant secretly intended not to perform
or knew that he could not perform." Gurary v. Winehouse, 235
F.3d 792, 801 (2d Cir. 2000) (citations and quotations omitted);
see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d
Cir. 1993) (dismissing 10b-5 claim where plaintiff alleged no
fact probative of defendant's intent not to perform promises
made in contracts executed in connection with sale of securities
at issue).  There are no facts alleged to support that at the
time of the so-called "Upsize" in January 2007 Deutsche Bank had
any such secret intention not to perform its contractual
obligations, or regarding Deutsche Bank's knowledge concerning

19

the eligibility of the assets at the time these credits were underwritten or added to the Reference Portfolio. See, e.g., Meridian Horizon Fund, LP v. KPMG (Cayman), Nos. 11-3311-cv, 11-3725-cv, 2012 WL 2754933, at *3 (2d Cir. Jul. 12, 2012) (dismissing 10b-5 claim based on "impermissible allegations of fraud by hindsight"); Bay Harbour Mgmt. LLC v. Carothers, Nos. 07-1124-cv, 07-1157-cv, 2008 WL 2566557, at *2 (2d Cir. June 24, 2008) (same).  The contractual terms in the Swap Agreements were disclosed and Arco represented it had received and reviewed the Transaction Documents prior to its decision to double down on its investment and purchase additional notes.  Without evidence of fraud, § 10(b) liability cannot lie where a "defendants disclosed the practices of which plaintiff now complains." See, e.g., In re Citigroup Auction Rate Secs. Litig., 700 F. Supp.2d 294, 307 (S.D.N.Y. 2009).

The FAC has also failed to plead sufficiently particularized facts to establish scienter.  To plead a strong inference of scienter, a plaintiff must allege facts that "(1) show[] that the defendants had both motive and opportunity to commit the fraud or (2) constitut[e] strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 103 (2d Cir. 2007).

Arco fails to allege facts supporting a motive to defraud in connection with the CRAFT CLO or Earls Eight transaction beyond an ordinary desire for commercial profit. See Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996) ("generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor" insufficient to establish scienter); In re AstraZeneca Secs. Litig., 559 F. Supp. 2d 453, 468 (S.D.N.Y. 2008) (same). Nor has Arco pled facts to support an inference that Deutsche Bank knowingly or recklessly made misstatements or omissions of material fact or knowingly or recklessly effected a scheme to defraud Arco in violation of Rule 10b-5. (Defendants' Motion to Dismiss, July 29, 2013 ("Mov. Br."), at 7-8 (citing Exs. 2-5, 8-11, 14-17), 16-17, 21).) In sum, Arco fails to adequately allege any facts supporting the inference that Deutsche Bank knew the risk or value of any particular asset to be other than as represented at the time it was added to the Reference Portfolio. See Catton v. Defense Tech. Sys., Inc., No. 05 Civ. 6954(SAS), 2006 WL 27470, at *8 (S.D.N.Y. Jan. 3, 2006) (dismissing 10b-5 claim for failure to state with particularity the facts supporting its "information and belief" allegations); see also O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) ("[W]hile Rule 9(b) permits scienter to be demonstrated by

21

inference, this 'must not be mistaken for license to base claims
of fraud on speculation and conclusory allegations.'")
(citations omitted).

Though Arco has contended that it has averred facts
relevant to scienter, calling Deutsche Bank's arguments
"disingenuous" and "laughable" and claiming that Deutsche Bank
"ignores the allegations" (Opp. Br. at 21-22), scienter cannot
be pleaded merely by describing with rhetorical flourish the
deal structure and mechanics of the transactions, when those
matters were disclosed to Arco in detail.  (Mov. Br. at 7-8
(citing Exs. 2-5, 8-11, 14-17), 16-17, 21.)

Finally, the FAC must establish reliance.  Under Rule
10b-5, Arco must allege reliance on allegedly deceptive acts of
which it was aware. See, e.g., Stoneridge Inv. Partners, LLC v.
Scientific Atlanta Inc., 552 U.S. 148, 161, 171 (2008) (holding
"deceptive acts, which were not disclosed to the investing
public are too remote to satisfy the requirement of reliance,"
because a plaintiff cannot rely on acts of which it is unaware);
Mills v. Polar Molecular Corp., 12 F.3d at 1175 (a 10b-5
plaintiff must demonstrate that he relied on defendant's false
statements when he entered the transaction).  Arco fails to
plead any false statements or acts by Deutsche Bank upon which

22

Arco purportedly relied.  Arco's allegation that it assumed that Deutsche Bank would honor its contractual duties in good faith is insufficient under the applicable standard.  In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583(WHP), 2012 WL 3339098, at *9 (S.D.N.Y. Aug. 15, 2012) (a plaintiff must allege reliance on a specific deceptive act of which it was aware; reliance on an assumption that a defendant would honor its duties is not enough).

Arco has contended that reliance is not an element of a Rule 10b-5(a) and (c) claim, and cites district court decisions that pre-date controlling authorities, including this Court's decision in In re Tower Automotive Secs. Litig., 483 F. Supp. 2d 327, 349 (S.D.N.Y. 2007). (See Opp. Br. at 23.)  Arco's arguments and its cases have been superseded by the Supreme Court's holding in Stoneridge Inv. Partners, LLC v. Scientific Atlanta Inc., 552 U.S. 148, 161, 171 (2008), and its progeny, such as In re Smith Barney Transfer Agent Litig., 05 Civ. 7583(WHP), 2012 WL 3339098, at *9 (S.D.N.Y. Aug. 15, 2012). Those controlling decisions require Arco to plead reasonable reliance to state a viable claim. (Mov. Br. at 17.)

Regardless, Arco is foreclosed from asserting reasonable reliance because it purchased the CRAFT Notes subject

23

to express disclaimers of reliance. See, e.g., Emergent Capital
Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d
Cir. 2003) (in determining if reasonable reliance is present,
courts look to "the entire context of the transaction, including
factors such as its complexity and magnitude, the sophistication
of the parties, and the content of any agreements between
them"); Harsco Corp. v. Segui, 91 F.3d 337, 345-348 (2d Cir.
1996) (reliance not reasonable where plaintiff was a
sophisticated investor who expressly disclaimed reliance on
representations made outside of the contract).  The same holds
true for the Earls Eight transaction, which included Offering
Documents containing similar disclaimers.  (Tambe Decl. Ex. 25
at 1, 3.)

        The June 6 Opinion dismissed the federal securities
claims on statutes of limitations and repose grounds, and did
not identify any pleading deficiencies.  Arco has contended that
the Court is therefore barred from reconsidering Deutsche Bank's
merit arguments as to these claims under the "law of the case,"
because the June 6 Opinion implicitly rejected any arguments it
did not address. (See Opp. Br. at 14.)  However, precedent is to
the contrary. See, e.g., Orbit One Commc'ns, Inc. v. Numerex
Corp., 692 F. Supp. 2d 373, 382 (S.D.N.Y. 2010) (rejecting
plaintiff's "law of the case" assertion as "baseless" where

24

prior decisions in case have not "'held [on]'or 'decided'" the contested issue); accord DeWeerth v. Baldinger, 38 F.3d 1266, 1271 (2d Cir. 1994) (finding dismissal of claim on procedural grounds did not result in allegedly implicit holding on merits of claim becoming "law of the case") (cited by Arco). From a policy perspective, it makes no sense for the "law of the case" doctrine to apply where, as here, there is no prior ruling on an issue. Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) (the rationale behind the "law of the case" doctrine is "to save judicial time" and to prevent the "unseemliness" of a court "altering a legal ruling as to the same litigants").

Because Arco's allegations fail to sufficiently plead the required elements of the claims, and because both claims are independently time-barred, Counts I and II are dismissed with prejudice.

**The Court Declines to Exercise Supplemental Jurisdiction over the State Law Claims**

Deutsche Bank also moves to dismiss Arco's state law claims for common law fraud and breach of contract, Counts III and IV respectively.

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); see also Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

Because Arco's federal securities claims are both dismissed in the instant action, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and Counts III and IV are dismissed without prejudice.

26

**Conclusion**

Based upon the conclusions set forth above, the motion of Deutsche Bank to dismiss the FAC is granted in its entirety and Counts I and II of the FAC is dismissed with prejudice.

New York, NY
November 2, 2013

_____
ROBERT W. SWEET